# LEE LITIGATION GROUP, PLLC

30 East 39th Street, Second Floor
New York, NY 10016
Tel: 212-465-1180
Fax: 212-465-1181
info@leelitigation.com

WRITER'S DIRECT:  212-465-1188
cklee@leelitigation.com

December 8, 2017

VIA ECF
The Honorable William F. Kuntz II, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Lau v. NOW Health Group, Inc.*
              Case No. 1:17-cv-03992-WFK-SJB

Dear Judge Kuntz:

    We are counsel to Plaintiff in the above-referenced action. We write in response to Defendant's December 1, 2017 letter requesting a pre-motion conference. For the reasons detailed below, Defendant's arguments are meritless. Accordingly, Plaintiff respectfully requests that Defendant's request for a pre-motion conference be denied.

## I. Plaintiff Adequately Alleges Injury under NY GBL § 349 and § 350

    Citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999), Defendant argues that Plaintiff's injury "is not a cognizable injury under GBL § 349 and § 350, because consumers may not allege injury in the form of the full purchase price simply because they claim they would not otherwise have purchased a product." However, Plaintiff claims more than just this. In *Small*, plaintiffs alleged that "defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that they would not have bought these cigarettes had they known that nicotine is an addictive drug." *Id.* at 51. However, the only injury alleged was "that defendants' deception prevented them from making free and informed choices as consumers." *Id.* at 56. This is not Plaintiff's argument in the instant action. Her injury was <u>not</u> that Defendant prevented her from making the free and informed choice of whether to purchase its Liver Detoxifier and Regenerator, but that the actual value of this product is <u>less</u> than that warranted by Defendant. The injury was not to Plaintiff's free will, but to her pocketbook.

    New York courts have rejected the "deception as injury theory" because "deceived consumers may nevertheless receive - and retain the benefits of - something of value, even if it is not precisely what they believed they were buying." *Dash v. Seagate Tech. (US) Holdings, Inc.*, 27 F. Supp. 3d 357, 361-62 (E.D.N.Y. 2014) (quotes and

citation omitted).  Thus, New York plaintiffs are not entitled to refund of a product's entire purchase price on the grounds that they were deceived *in those cases* where they received "something of value" despite the deception.  However, New York law does not hold that deceived consumers *always* receive something of value and hence are *never* entitled to a refund of the entire purchase price.  The purchase price may not serve as compensation for the bare indignity of having been deceived.  But it can serve as compensation for the receipt of a genuinely worthless product, like Defendant's product.

Defendant also argues that Plaintiff fails to allege that she paid a "price premium" as a result of its deception.  However, Plaintiff is not required to plead a price premium in order to plead injury: "Defendant argues that New York courts have recognized the payment of a plaintiff's purchase price as a Section 349 injury only when the plaintiff paid a 'price premium.'  But there is no such rigid 'price premium' doctrine under New York law." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).  At any rate, common sense dictates that Defendant's deception allowed it to charge a price premium, because no one would knowingly pay anything for what is essentially an inert sugar pill.

## II. Plaintiff Does Not Rely on a Lack of Substantiation Argument

Defendant cites *Hughes v. Ester C Co.* for the proposition that "the simple allegation that a given statement is unsubstantiated or unsupported by scientific evidence, standing alone, will not be enough for purposes of showing a deceptive or fraudulent representation."  930 F. Supp. 2d 439, 459 (E.D.N.Y. 2013).  However, the Complaint alleges actual falsity, and not merely the absence of substantiation.  Complaint ¶¶ 2, 3 affirmatively alleges that Defendant's "Liver Detoxifier and Regenerator" cannot actually detoxify and regenerate the liver, making Defendant's representations to this effect affirmatively false.  Complaint ¶ 8 alleges that Plaintiff did not experience any of the benefits promised by Defendant.  Complaint ¶ 13 cites *Science-Based Medicine*, a physician-run organization, for the allegation that the "detoxification" promised by Defendant "is simply the co-opting of a real term to give legitimacy to useless products and services."  And Complaint ¶¶ 14, 16, 17, 18 cite the testimony of medical professionals for the allegation that the liver detoxifies itself and that this process cannot be assisted by dietary supplements, but only medical intervention.  Defendant's claim that Plaintiff fails to "allege actual falsity" is belied by nearly every page of the Complaint.

Defendant seizes on Plaintiff's allegation that "there is no evidence that Milk Thistle, N-Acetyl Cysteine, or Methionine do anything to promote liver functioning," Compl. ¶ 22, to corroborate its mischaracterization of Plaintiff as alleging mere non-substantiation.  But Defendant thereby equivocates on the meaning of "substantiated" and "unsubstantiated."  As one court observed:

> There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are "unsubstantiated," but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an "unsubstantiated" claim is only the former.

2

*Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 U.S. Dist. LEXIS 157132, at *7 (S.D. Cal. Oct. 31, 2012)

Plaintiff does **not** allege that Defendant's claims merely "have no evidentiary support one way or the other." This would be the case if no one had ever undertaken to study these claims. However, Complaint ¶¶ 20-34 documents the numerous studies of Milk Thistle, N-Acetyl Cysteine, and Methionine, all of which indicate that these ingredients do not deliver the benefits promised by Defendant. The scientific method requires researchers to frame their conclusions in terms of an absence of evidence rather than the confirmation of falsity. That is, they do not attempt to prove a negative. But this is "lack of substantiation" in the scientific sense, **not** in the legal sense that would bar Plaintiff's claims. In any case, this discussion is supplemental to Plaintiff's central argument that the product cannot work given how the human body works.

### III. Plaintiff Adequately Pleads Common Law Fraud

Defendant next argues that Plaintiff fails to plead reasonable reliance because she could have independently researched whether Defendant's liver detoxification claims are medically valid. But the standard of due diligence Defendant seeks to impose is contradicted by its own citation, according to which "[j]ustifiable reliance does not exist where a party has the means to discover a falsehood by the exercise of ordinary intelligence, and fails to make use of those means," *Abele Tractor & Equip. Co., Inc. v. Balfour*, 20 N.Y.S.3d 697, 701 (App. Div. 2015) (citation omitted). The standard is "ordinary intelligence," not "academic research." And the Complaint at numerous points explains why ordinary intelligence is liable to be misled by Defendant's detoxification claims. *See* Complaint ¶¶ 13-14, 35-38. At any rate, "[w]hether plaintiff exercised reasonable diligence in discovering defendant's fraud must be resolved by the trier of fact." *Id*. at 700.

### IV. Plaintiff Has Standing to Seek Injunctive Relief

Defendant's argument that Plaintiff lacks standing to seek injunctive relief ignores numerous court decisions ruling that plaintiffs in consumer fraud actions have standing to seek injunctive relief on behalf of absent class members. "[A]n injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F. Supp. 3d 440, 445 (E.D.N.Y. 2014).

Respectfully,

*/s/ C.K. Lee, Esq.*

cc:   all parties via ECF

3